UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SARAH CROWELL,

    Plaintiff,

v.                                                                                Case No. 1:17-cv-603

                                                                             Hon. Gordon J. Quist

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,
_____/

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security Administration (Commissioner) which denied her claim for disability insurance benefits (DIB).

Plaintiff alleged a disability onset date of July 27, 2009. PageID.830. Plaintiff identified her disabling conditions as: reflex sympathetic dystrophy (RSD); fibromyalgia; obsessive compulsive disorder (OCD); hypothyroid; depression; degenerative disc disease; arthritis (back, neck and hands); type two diabetes; general anxiety disorder; and hormone replacement therapy. PageID.835. Prior to applying for DIB, plaintiff earned a B.A. degree in psychology and had past employment as child welfare caseworker, a family caseworker, a general laborer, and a cashier. PageID.57-58, 541, 836.

On February 11, 2011, Administrative Law Judge (ALJ) Alice Jordan held a hearing in Greenville, South Carolina on February 11, 2011 and entered a decision denying benefits on February 23, 2011. PageID.39-46, 51-89. This decision was reversed and remanded

by the United States District Court for the District of South Carolina on January 6, 2014. PageID.615-633.  Pursuant to that court's order, the Appeals Council vacated ALJ Jordan's decision, and directed the ALJ to offer plaintiff the opportunity for a hearing, and to take any further action needed to complete the administrative record and issue a new decision.  PageID.653.

ALJ Kathleen Eiler held an additional hearing in Mount Pleasant, Michigan, on September 23, 2014, during which plaintiff was represented by Attorney Cooke.  PageID.576-608. ALJ Eiler reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on December 19, 2014.  PageID.513-543.  The Appeals Council declined to assume jurisdiction of the matter.  PageID.552-553.  Then, on June 6, 2017, the Appeals Council granted plaintiff's request for an extension of time to file a civil action.  PageID.552-553.  ALJ Eiler's December 19, 2014 decision is the final decision of the Commissioner and is now before the Court for review.

## I.  LEGAL STANDARD

This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence.  42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990).  "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994).  A determination of substantiality of the evidence must be based upon the record taken as a whole.  *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only.  This Court does not review the evidence de novo, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).  The fact

that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir.

2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ's DECISION

At the outset of her decision, ALJ Eiler identified the matters to be addressed on remand:

> Pursuant to the District Court remand order, the Appeals Council has directed the undersigned for further administrative proceedings consistent with the order of the District Court. The District Court ordered that the Administrative Law Judge to more properly analyze the plaintiff's credibility with particular attention to the factors set forth in 20 C.F.R. §404.1529(c)(3); SSR 03-2p; SSR 96-7p; 61 Fed. Reg. 34483-01; and SSR 12-2p; 77 Red. Reg. 43,640-01. It also directed the Administrative Law Judge to reexamine the findings of normal examinations of the claimant's treating provider Dr. Schwartz and the consultative examiner.

PageID.513. [1]

Plaintiff's claim failed at the fifth step of the evaluation. At the first step, ALJ Eiler found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of July 27, 2009, and met the insured status requirements of the Social Security Act through December 31, 2014. PageID.515.

At the second step, ALJ Eiler found that plaintiff had severe impairments of: degenerative disc disease; fibromyalgia; RSD; left shoulder disorder; affective disorder; anxiety disorder; and, somatoform disorder. PageID.515. At the third step, ALJ Eiler found that plaintiff

---

[1] The Court notes that the Social Security Administration's "Revisions to Rules Regarding the Evaluation of Medical Evidence" (82 FR 5844, 2017 WL 168819 (Jan. 18, 2017)), effective for claims filed on or after March 27, 2017, do not apply to plaintiff's claims in this action.

did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.519.

ALJ Eiler decided at the fourth step that:

> [C]laimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant can never climb ladders, ropes, or scaffolds but can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, or crawl. She must avoid concentrated exposure to temperature extremes and avoid all exposure to workplace hazards. She can perform simple, routine, repetitive tasks with no production rate pace work. She can occasionally interact with supervisors and coworkers, but is limited to minimal, superficial interaction with the general public.

PageID.521. ALJ Eiler also found that plaintiff is unable to perform any past relevant work. PageID.541.

At the fifth step, ALJ Eiler determined that plaintiff could perform a significant number of unskilled jobs at the sedentary exertional level in the national economy. PageID.542. Specifically, ALJ Eiler found that plaintiff could perform the requirements of light and unskilled occupations in the State of Michigan as follows: surveillance system monitor (750 jobs regionally and 22,500 jobs nationally); and packer (4,500 jobs regionally and 135,000 jobs nationally). PageID.542. Accordingly, ALJ Eiler determined that plaintiff has not been under a disability, as defined in the Social Security Act, from July 27, 2009 (the alleged onset date) through December 19, 2014 (the date of the decision). PageID.542-543.

### III. DISCUSSION

Plaintiff's amended brief did not set forth a statement of errors as directed by the Court.[2] Upon reviewing the arguments in plaintiff's brief, the Court gleans three alleged errors on appeal:

---

[2]Plaintiff's counsel did not follow the Court's instructions for filing a Social Security Appeal because he: failed to include a Statement of Errors ("The initial brief shall not exceed 20 pages and must contain a Statement of Errors, setting forth in a separately numbered section, each specific error of fact or law upon which Plaintiff seeks reversal or

> **A. In assessing a claimant's credibility the ALJ's decision must contain specific reasons for her finding, supported by the evidence in the case record. The ALJ failed to properly follow Social Security Rulings SSR 12-2p and SSR 03-02p, which expressly explains how to evaluate claims involving fibromyalgia and RSD. By failing to properly evaluate these impairments, the ALJ made impermissible adverse credibility findings.**
>
> **1.     ALJ's failure to cite SSR's**

Plaintiff's argument boils down to the claim that all of the ALJ's findings "fail to appreciate the nature of [plaintiff's] impairments" and that "[t]he ALJ never even mentions SSR 12-2p or SSR 03-2p, so it is unclear if the ALJ understood the unique nature of these impairments." Plaintiff's Amended Brief at PageID.1313, 1316.[3]  As an initial matter, plaintiff is wrong when she stated that ALJ Eiler failed to cite SSR 12-2p and SSR 03-2p.  The ALJ cited those on the first page of her decision.  PageID.513.  Even if the ALJ failed to explicitly cite SSR 12-2p, such an omission does not mean that she failed to understand plaintiff's fibromyalgia.  "SSR 12-2p merely provides guidance on how to apply pre-existing rules when faced with a claimant asserting disability based on fibromyalgia." *Luukkonen v. Commissioner of Social Security*, 653 Fed. Appx. 393, 399 (6th Cir. 2016).  Similarly, even if the ALJ failed to explicitly cite SSR 03-2p, such an omission does not mean that the ALJ failed to properly evaluate plaintiff's RSD diagnosis. *See*

---

remand.  Failure to identify an issue in the State of Errors constitutes a waiver of that issue."); filed a motion for summary judgment ("Motions for summary judgment are inappropriate in Social Security cases and shall not be filed"); and filed an oversized reply brief ("Plaintiff's reply brief, which shall not exceed five pages, is to be filed by 11/20/2017."). *See* Notice (ECF No. 8).  Plaintiff's counsel replaced the motion for summary judgment with an initial brief (ECF No. 12) and then an amended brief (ECF No. 13).  The amended brief could have been stricken because it failed to follow the PageID citation format required under Administrative Order 16-MS-17 (effective March 7, 2016) and did not include a statement of errors as directed by the Court.  However, the Court allowed counsel to file this amended brief.  The Court also refrained from striking plaintiff's oversized reply brief.

[3] *See* 20 C.F.R. § 402.35(b)(1) (SSR's "are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations" adopted by the agency).  While SSR's do not have the force of law, they are an agency's interpretation of its own regulations and "entitled to substantial deference and will be upheld unless plainly erroneous or inconsistent with the regulation." *Kornecky v. Commissioner of Social Security*, 167 Fed. Appx. 496, 498 (6th Cir. 2006).

*Shepard v. Commissioner of Social Security*, 705 Fed. Appx. 435, 439 (6th Cir. 2017) ("Explicitly citing SSR 03-2p would not have substantively changed the ALJ's analysis[.]").

Here, ALJ Eiler's 31-page decision included an *extensive* review of the medical evidence, found that plaintiff had severe impairments of both fibromyalgia and RSD, and determined that even with her many restrictions, plaintiff retained the residual functional capacity (RFC) to engage in a limited range of sedentary work.  PageID.515-541. Plaintiff did not point out particular errors in the ALJ's evaluation of her fibromyalgia or RSD, other than general statements that the ALJ did not understand these impairments.

When a plaintiff claims that the ALJ failed to explicitly apply SSR 12-2p's diagnostic criteria for determining whether the plaintiff has a medically determinable impairment of fibromyalgia, such error -- to the extent it exists -- is harmless when, as in this case, the ALJ concluded that the plaintiff had fibromyalgia and that the fibromyalgia constituted a severe impairment under the second step of the five-step analysis.  *See Luukkonen*, 653 Fed. Appx. at 399.  Plaintiff's claim that the ALJ failed to properly apply SSR 12-2p's guidelines for evaluating her statements about the severity of her symptoms also fails, because ALJ Eiler followed that two-step process set forth in SSR 96-7p.[4]  PageID.521-522.  *See Luukkonen*, 653 Fed. Appx. at 399 ("Section IV of SSR 12-2p states that when evaluating a claimant's statements, ALJs must 'follow

---

[4] SSR 96-7p provides in pertinent part:

"First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms. . . .

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record."

the two-step process set forth in our regulations and in SSR 96-7p.'"). Finally, as discussed in § II, *supra*, ALJ Eiler also followed the five-step analysis. In summary, ALJ Eiler did not commit error in evaluating plaintiff's claim, having both cited SSR 12-2p and applied the Ruling's principles in her decision.

Similarly, plaintiff points to no particular error in ALJ Eiler's evaluation of her severe impairment of RSD. "[O]nce a diagnosis of RSD is found, the determination of whether someone is disabled continues the same way it does for any other impairment. Indeed, SSR 03-2p's guidance on assessing a claimant's RFC mirrors the guidance provided by social security rulings for other medical disorders." *Shepard*, 705 Fed. Appx. at 439 (internal quotation marks and citations omitted). As discussed, ALJ Eiler assessed plaintiff's claims under the appropriate standards. Accordingly, these claims of error should be denied.

### 2.    The ALJ made impermissible adverse credibility findings.

Plaintiff contends that ALJ Eiler made impermissible credibility findings, claiming that the ALJ improperly relied on plaintiff's ability to perform daily activities. *See* Plaintiff's Amended Brief (ECF No. 13, PageID.1315). An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997). In evaluating a claimant's assertions of pain or ailments, it is appropriate for an ALJ to consider the claimant's household and social activities. *Id.* at 532. The Court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).

Here, the ALJ noted that plaintiff could perform a wide variety of daily activities:

> [T]he claimant has described daily activities, which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. On

8

March 16, 2010, the claimant remarked that she made sure her daughter was clean, fed, and safe (4E/1). She stated that she saw friends and talked to them and family over the phone (4E/2, 5). She commented that she did not need reminders to take her medication or to perform her personal care (4E/3). The claimant reported that she made simple meals, did laundry, washed dishes, drove a car, went shopping, and handled money (4E/3-4). On July 19, 2010, the claimant fed, bathed, and dressed independently (25F/6). On September 13, 2010, the claimant stated that she was able to independently complete all of her activities of daily living and instrumental activities of daily living (17F/2). She was also driving. The claimant reported that she enjoyed reading, movies, and taking her four-year-old daughter to various activities.  She arrived on time for the interview and presented as adequately groomed. On June 29, 2012, the claimant stated that she would be out of town and would return to chiropractic treatment at the end of July (27F/15).  On July 27, 2012, the claimant went out of state (30F/5). On September 29, 2013, the claimant reported that she did some housework, cared for her daughter, volunteered in the community, read, and watched television in a typical day (17E/2). She commented that she cared for a cat and dog, did not need reminders to perform her personal care, made simple meals, did laundry, wiped the counters, cleaned the toilet, drove a car, shopped, handled money, and played board games with her family (17E/5). On September 30, 2013, the claimant's mother remarked that her daughter could care for her seven-year-old daughter and pets, perform her personal care with no problem, require no reminders to take her medication or to perform her personal care, make simple meals, dust, do laundry, pick up, load the dishwasher, drive or walk for transportation, shop, handle money, read, watch television, sew, paint, and do word puzzles (18E/2-5). Her mother commented that the claimant would spend time with others in Girl Scouts, while being a school assistant, and at the library, church, or her daughter's sporting events (18E/5). She stated that her daughter did not need someone to accompany her when she went out. Her mother commented that her daughter did not have any problem getting along with family, friends, neighbors, or others (18E/6). She remarked that her daughter followed written and spoken instructions well, could walk a mile at one time, could lift 15 pounds, and could handle changes in routine fine (18E/7).

On December 16, 2013, the claimant remarked that she got along with her parents and daughter (36F/4). She commented that she volunteered at her daughter's school when she could. She stated that she went to her daughter's school for a holiday party and co-led her daughter's Girl Scout troop. The claimant reported that she cared for her daughter by helping her get ready for school, getting her daughter on and off the bus, making sure that her daughter did her homework, making sure her daughter showered or bathed, reading to her, playing a board game with her, and talking with her daughter about her day. She remarked that she did limited housekeeping such as wiping off the counter and doing the laundry. The claimant commented that she was able to care for her own personal hygiene and went grocery shopping. On April 16, 2014, the claimant reported engaging in Girl Scouts (39F/18). The claimant described her parents as being unreliable as her mother was an alcoholic and her father did not understand mental illness. She stated that she

9

did find motivation in helping her daughter. On April 23, 2012, the claimant remarked that she had done something nearly every day and had been doing more around the house (39F/25). She reported that she was able to walk on flat surfaces for up to an hour and engage in yoga specific for those with chronic pain or back issues. The claimant agreed to start incorporating walks during the day. On May 7, 2014, the claimant commented that she was engaging in more activities with her daughter (39F/41). On May 13, 2014, the claimant had engaged in activities with her daughter over the weekend that went well (39F/48). On May 27, 2014, the claimant reported that she and her daughter engaged with neighbors and she had been geo-caching for a few days, which she enjoyed (39F/64). On June 4, 2014, the claimant stated that she had a busy week with Girl Scout activities but was able to manage and it went well (39F/72). On June 10, 2014, the claimant remarked that she had an active weekend with the Girl Scout clean up (39F/80). She had also been watching her daughter in horse shows, which brought her joy.

PageID.529-530.

Based on the record, ALJ Eiler determined that plaintiff failed to demonstrate that she is completely restricted from work activity. PageID.530. However, the ALJ reduced plaintiff's exertional level to sedentary, and established an RFC that "accounts for [plaintiff's] allegations of lack of concentration, persistence, and pace due to pain and fatigue." PageID.530. Plaintiff does not address the ALJ's credibility finding in any detail. Rather, plaintiff submits the conclusory statement that "normal findings and sporadic daily activities, such as those mentioned by the ALJ in the case at hand are likewise unhelpful." Plaintiff's Amended Brief at PageID.1315. Plaintiff's cursory remarks do not demonstrate any error in the ALJ's evaluation of plaintiff's credibility. There is no compelling reason to disturb the ALJ's credibility determination. *Smith*, 307 F.3d at 379. Accordingly, this claim of error should be denied.

### B. The ALJ improperly gave little weight to the medical opinion of Dr. Schwartz, whose opinions support a finding of disability.

A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of

10

physicians who examine claimants only once." *Walters*, 127 F.3d at 529-30. "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. § 404.1527(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").

Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013); 20 C.F.R. § 404.1527(c)(2). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

ALJ Eiler reviewed three opinions provided by Robert Schwartz, M.D. The ALJ gave limited weight to the doctor's June 23, 2010 opinion, which found a number of limitations including: that plaintiff could rarely lift and carry 10 pounds; that she would require unscheduled breaks; that she would miss more than four days of work per month; that she had a number of

11

postural limitations; and that these limitations applied to plaintiff since 2003. PageID.531. After reviewing the opinion, the ALJ found that:

> In spite of the claimant's extensive alleged physical and mental symptomatology, the objective medical evidence of record does not indicate that she was prevented from all work activity or more limited than assessed in the residual functional capacity stated. Dr. Schwartz's own treatment notes and the other medical evidence of record do not support such severe restrictions.

*Id*. The ALJ then discussed the records which supported this finding. PageID.531-532. In this regard, the ALJ noted that "the claimant continued to work at substantial gainful activity levels until July 2009, which directly contradicts Dr. Schwartz's opinion that the claimant had these severe restriction since 2003 (6D/l) [PageID.806]". PageID.532.

ALJ Eiler gave significant weight to the doctor's November 29, 2012 opinion that plaintiff should limit her lifting from below knee to 20 pounds. PageID.530. The ALJ noted that the opinion was well supported by medically acceptable clinical and laboratory diagnostic techniques, and not inconsistent with the other substantial evidence in the record to the extent that it did not preclude plaintiff from engaging in work at the sedentary exertion level. *Id*.

Finally, ALJ Eiler gave limited weight to the doctor's July 8, 2013 opinion "that the claimant's chronic pain would have prevented her from performing a full-time job during the time period he treated her, which was from April 14, 2008, through December 13, 2012, because it was most probable that she would not have been able to complete a whole eight-hour workday even at a sedentary job". PageID.532. After reviewing this opinion, the ALJ found that:

> In spite of the claimant's extensive alleged physical and mental symptomatology, the objective medical evidence of record does not indicate that she was prevented from all work activity or more limited than assessed in the residual functional capacity stated above. Dr. Schwartz's own treatment notes and the other medical evidence of record do not support such severe restrictions.

*Id*. The ALJ recounted the doctor's records which supported her determination. PageID.532-533.

Plaintiff does not address the ALJ's evaluations of Dr. Schwartz's opinions in any detail nor explain how the ALJ's evaluations were not supported by substantial evidence. Rather, plaintiff submits broad statements of error: that ALJ Eiler failed to properly evaluate her RSD and fibromyalgia because: the ALJ cited "to instances of normal strength, normal gait, normal range of motion etc [sic];" the ALJ failed "to understand the subjective nature of [plaintiff's] impairments;" and that "[t]he ALJ's decision is void of several pertinent factors such as consideration of the length of Dr. Schwartz's treatment relationship with Crowell and his specialty." Plaintiff's Brief at PageID.1321-1322. Plaintiff also suggests that the ALJ did not follow the "reminder" in the federal court's January 6, 2014 order regarding how to apply regulations on remand. PageID.1321. These cursory arguments do not establish that the ALJ's evaluations of Dr. Schwartz's opinions were not supported by substantial evidence. The ALJ recognized the Dr. Schwartz was plaintiff's treating physician from April 2008 through December 2012, tracked plaintiff's treatment with the doctor, explained the weight assigned to the doctor's opinions, and cited medical evidence to support her determinations. Accordingly, this claim of error should be denied.

> **C. Here, the ALJ failed to properly evaluate the opinion of treating source, Angela Mosley, LPN, NCC, CCPC. This opinion supports a finding of disability.**

The ALJ reviewed a number of opinions from Ms. Mosley (sometimes referred to as "Ms. Mosely"). Plaintiff contends that Ms. Mosley is an LPN or "licensed practical nurse" as well as a counselor. Plaintiff's Amended Brief (ECF No. 13, PageID.1322-1323). The ALJ refers to Ms. Mosley as an L.P.C. (licensed professional counselor). PageID.517. Contrary to plaintiff's contention, Ms. Mosley identified herself as an LPC, not an LPN. *See, e.g.*, Mental RFC Questionnaire (PageID.425); Session Notes (PageID.487).

As a licensed counselor, Ms. Mosley is not an acceptable medical source under 20 C.F.R. § 404.1513(a) (defining acceptable medical sources as licensed physicians, licensed or certified psychologists, licensed optometrists (for establishing visual disorders only), licensed podiatrists (for establishing impairments of the foot, or foot and ankle only), and qualified speech-language pathologists (for establishing speech or language impairments only)).  As the Sixth Circuit explained:

> Section 404.1513 establishes two categories of medical evidence, "acceptable medical sources" and "other sources."  Generally speaking, "acceptable medical sources" are licensed physicians and psychologists. 20 C.F.R. § 404.1513(a). The regulations establish the weight or deference that must be given to the opinion of an acceptable medical source depending on whether it is a "treating source," a "non-treating (but examining) source," or a "non-examining source." *Smith v. Comm'r of Social Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). "Other sources" is everyone else, including nurse practitioners, physician's assistants, and therapists. 20 C.F.R. § 404.1513(d)(1).  More specifically, nurse practitioners, therapists, and the like are "non-acceptable medical sources." *See id.*  The opinion of a "non-acceptable medical source" is not entitled to any particular weight or deference – the ALJ has discretion to assign it any weight he feels appropriate based on the evidence of record. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530 (6th Cir. 1997); *Engebrecht v. Comm'r of Soc. Sec.*, 572 Fed. Appx. 392, 397-98 (6th Cir. 2014).

*Noto v. Commissioner of Social Security*, 632 Fed. Appx. 243, 248-49 (6th Cir. 2015).  SSR 06-03p provides that opinions from other medical sources, such as nurse practitioners, physicians' assistants and therapists "are important and should be evaluated on key issues such as impairment severity and functional effects, along with other relevant evidence in the file."  *See* SSR 06-03p. *See also, Noto*, 632 Fed. Appx. at 249 ("Social Security Ruling 06-03p elaborates further as to how the ALJ should treat evidence from a non-acceptable medical source").

On April 30, 2009, Ms. Mosley "opined that the claimant's obsessive compulsive disorder was very intense and she was having difficulty functioning." PageID.537.  In giving this opinion little weight, the ALJ found that "This opinion is vague without specifying particular restrictions that the claimant may have when working. Additionally, the medical evidence of

record does not support this opinion." PageID.537. The ALJ also noted that "a licensed professional counselor is not an acceptable medical source" citing 20 C.F.R. § 404.1513(a). PageID.538.

On September 15, 2009, "Ms. Mosely opined that the claimant was unable to work." PageID.538. In giving this opinion little weight, the ALJ observed that "This opinion is vague without specifying particular restrictions that the claimant may have to preclude her from working. Additionally, the medical evidence of record does not support such a severe restriction." PageID.538. The ALJ noted that a licensed professional counselor was not an acceptable medical source and that "[m]oreover, the final responsibility for deciding the issue of residual functional capacity and the ultimate issue of disability is reserved to the Commissioner," citing 20 C.F.R. §404.1527(e). PageID.538.

On January 15, 2010, Ms. Mosley "opined that the claimant was unable to work due to RSD, fibromyalgia, and severe OCD." PageID.538. In giving this opinion little weight, the ALJ stated that:

> This opinion is based, at least in part, upon physical problems and the claimant's subjective complaints regarding her physical condition. Ms. Mosley's opinion appears to rest at least in part on an assessment of impairments outside her area of expertise. This opinion is vague without specifying particular restrictions that the claimant may have when working. Additionally, the medical evidence of record does not support such severe restrictions.

PageID.539.

On March 16, 2010, "Ms. Mosley opined that the claimant's family, social, and environmental history is taking a toll on her physical symptoms, so that she cannot work." PageID.539. In giving this opinion little weight, the ALJ stated that:

> This opinion is based, at least in part, upon physical problems and the claimant's subjective complaints regarding her physical condition. Ms. Mosley's opinion appears to rest at least in part on an assessment of impairments outside her area of

> expertise. This opinion is vague without specifying particular restrictions that the claimant may have when working. Additionally, the medical evidence of record does not support such severe restrictions.

PageID.539.

On July 13, 2010, Ms. Mosley opined that plaintiff had a gradually decreasing level of functioning, difficulty maintaining household chores, could no longer work, was depressed, had memory issues emerging, had severe OCD, and could not physically handle any work. PageID.536.  In giving this opinion little weight, the ALJ noted, among other things, that there was no evidence of a formal thought disorder, that plaintiff denied suicidal ideation and visual and/or auditory hallucinations, and that plaintiff was cooperative in answering questions throughout the interview.  PageID.537.  In addition, the ALJ found that Ms. Mosley's opinion was based in part on plaintiff's physical problems and subjective complaints regarding her physical condition, and "appears to rest at least in part on an assessment of impairments outside her [Ms. Mosley's] area of expertise."  PageID.537.  Further, the ALJ noted that Ms. Mosley's "opinion is vague without specifying particular restrictions that the claimant may have when working" and that "the medical evidence of record does not support such severe restrictions."  PageID.537.

Contrary to plaintiff's claim, the record reflects that ALJ Eiler evaluated Ms. Mosley's opinions on key issues such as impairment severity and functional effects.  While plaintiff disagrees with that evaluation, she does not demonstrate any error by the ALJ.  Accordingly, this claim of error should be denied.

## IV. RECOMMENDATION

For the reasons discussed, I respectfully recommend that the Commissioner's decision be **AFFIRMED**.


Dated: July 12, 2018                                   /s/ Ray Kent
                                                       United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).